DISSENT.

Judge Buckner

dissenting from the majority-of the court, delivered his own opinion as follows:
My opinion is-that the circuit court correctly decided the points presented; and that the judgment ought, therefore, to be affirmed. Upon the most diligent examination of such authorities, as during the pressure of business, an opportunity of consulting has been afforded, I have not found any adjudged case, which, according to my view of it, can suppoi’t the opinion delivered in this case. It is admitted, that there is not the slightest ambiguity on the face of the covenant, on which the judgment was obtained. It is susceptible of the most clear and satisfactory interpretation; and cannot be distinguished in principle from an ordinary covenant to deliver $450 worth of any other article, at a stipulated price; say, for example, $450 worth of corn, at $1 per barrel, or of merchantable whiskeyvat 25 cents a gallon, or of merchantable pork, at $3 per *82 cwt. Of each of those Articles, there are various qualities; that is, they possess different degrees of excellence. Why, if parol evidence be admissable to prove the particular quality of the tobacco.which the parties intended should be delivered, might it not be equally admissible, to shew the intention of the parties as to the quality of the articles covenanted to be delivered in the cases supposed. No satisfactory reason can be assigned why it could not, yet no case has been cited; and I suppose, that none can be found, in which its admissibility under such circumstances, has been sanctioned.
Dissent.
In tiie opinion delivered, it is said, that “the appellant had a right to prove, which of the two kinds, or classes, of merchantable tobacco was intended by the parties to the covenant, but not that any particular quality of either kind was contemplated. I cannot consent to the correctness of the application, here made of the terms, kind and quality; nor to the propriety of the distinction drawn between them, as applicable to this case. The tobocco covenanted to be delivered, was to be manufactured and merchantable. The mode in which tobacco is manufactured, may affect its quality, or excellence, in its manufactured state, and consequently, its value, but it canpot change its kinds, except so far as the word, ferrad is used as significant of its quality, or the degree of its excellence. In whatever manner it may be manufactured, it might still be merchantable.
There are various modes of cultivating tobacco andjof managing it, after it is severed-from the ground. These different modes of treating it, produce various hues, and as various qualties, although it may all spring from seed taken from the same stock. Upon a covenant to deliver any given quantity of merchantable tobacco, will it be contended, that parol proof is admissible to shew that the parties to it, intended that the tobacco should have been cured by fire, or without fire, or that it should be strong dark colored tobacco best fitted to be manufactured for chewing, or light, yellow tobacco of a quality preferred for cigars? Surely not, and yet the quality and price of the one, and the other description is as *83 different from each other as the article manufactured with the aid of steam, is from that manufactured without it.
Dissent.
The doctrine respecting latent ambiguities does not apply to such a case, as the one under consideration, nor can it, in any case be applied, to prove the intended quality oí the article covenanted to be delivered.
It is said to be necessarily a matter of extrinsic evidence to apply the terms of an instrument, to a particular matter; the existence of which is also mat* ter of proof.
The terms of the instrument may be sufficiently definite and distinct, yet the objects to which it is to be applied, may not be equally so. In such cases, it is often doubtful, whether the description contained in the instrument, applies to the particular object pointed out by the evidence, or whether it be not equally applicable to several distinct objects.
The general rule is, that a latent ambiguity as to the object intended, (that is an ambiguity arising from extrinsic evidence,) may be removed by extrinsic evidence. Thus, if in a will, the description of the devisee, or of the estate devised, may be applied to either of two persons, of the same name, or to either of two estates. For example, A devised his estate to his cousin John Cluer, and there were two persons, (father and son,) of that name, parol evidence was admitted to shew, that the son was meant, and that of necessity; because otherwise, the bequest would be void for uncertainty. In the case of Peich vs. Dickson, I, Mason’s Reports, 11, Story justice says, he had found himself unsuccessful in every attempt which he had made, to reconcile all the decisions, upon the subject of latent and patent ambiguities: “The difficulty (he remarks,) lies not in the rule itself, (than which nothing can be clearer,) but in applying it to particular cates, where the shades of distinction are very nice. 1 here seems, indeed, to be an intermediate class of cases partaking of the nature of both latent and patent ambiguities; and that is, where the words are all'sensible, and have a settled meaning, but at the same time, *84 consistently admit of two interpretations according to the subject matter, in the contemplation of the parlies. In such a case, I think parol evidence might be admitted to shew the circumstances under which the contract was made, and the subject matter to which the parties referred. For instance, the word freight has several meanings, fn common parlance, and if, by a written contract', a party Were to assign his freight in a particular ship, it seems to me, that parol- evidence might be' admitted of the circumstances under which the contract was made to ascertain, whether it referred to goods on hoard of the ship; “or to an interest in the earnings of the ship, or, in other words to shew, in what sense, the parties intended to use the term.-”
But conceding that the reasoning of Judge Story is correct, I do not see the force of the attempted application, to the present case. Here there is no difficulty as to-the meaning of the term, merchantable. It is not susceptible of two different meanings, like the word freight. That is not the ground, upon which the introduction of the parol testimony is-attempted to be justified; but it is, because of merchantable tobacco, there is some of cpiality superior to some others.
To admit it, for such, a purpose, would, in my opinion, be contrary to the best established principles of law, and would render the evidence of the contract furnished by the.covenant, not at all superi- or to that, dependent upon the frail recollections, or the often misconceived impressions of witnesses.